RECEIVED
FEB 27 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| VIRGIN OIL COMPANY, INC. | CIVIL ACTION NO: 11-01521 |
| VERSUS | JUDGE DONALD E. WALTER |
| TENNESSEE GAS PIPELINE COMPANY | MAG. JUDGE KATHLEEN KAY |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss for Failure to State a Claim upon which Relief May be Granted and for Lack of Subject Matter Jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), filed by the Defendant, Tennessee Gas Pipeline Company ("TGP"). [Doc. #8]. The Plaintiff, Virgin Oil Company, Inc. ("Virgin Oil"), opposes this motion [Doc. #14]. For the reasons stated herein, Defendant's motion is hereby **DENIED**.

## BACKGROUND INFORMATION

In June 2009, certain unsecured creditors of Virgin Oil instituted bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Louisiana.[1] Accordingly, Virgin Oil was required to bring certain causes of action in accordance with deadlines established by Title 11 of the United States Bankruptcy Code.[2] Upon authority being granted by the Bankruptcy Court, the Official Committee of Unsecured Creditors for Virgin Oil brought the instant action on behalf of and for the benefit of Virgin Oil.[3]

As of June 25, 2009, the date of the initial bankruptcy filing, Virgin Oil owned a

---

[1] USBC, EDLA Case No. 09-11899.

[2] Doc. #1, FN1.

[3] Id.

65.9518% working interest in property known as Federal Outer Continental Shelf Oil and Gas Lease 19750, East Cameron 219 ("EC 219").[4] The remaining 34.0482% working interest in EC 219 was owned by Virgin Offshore U.S.A., Inc. ("Virgin Offshore"), a wholly-owned subsidiary of Virgin Oil.[5] EC 219 was under lease, in accordance with an agreement between Virgin Offshore and the U.S. Department of Interior, Minerals Management Service ("MMS"). The lease commenced in 1998, with a primary term of five years. However, according to the complaint, the lease was set to continue in force beyond expiration of the five-year primary term as long as the lessee, Virgin Offshore, maintained production.[6]

Virgin Offshore operated EC 219, for the financial benefit of both itself and Virgin Oil.[7] In connection with its operations, Virgin Offshore entered into a contract[8] with the defendant, TGP, for transportation of condensate through TGP's pipelines.[9] The complaint alleges that in August and September of 2008, EC 219 was "shut-in" as a result of Hurricanes Gustav and Ike and their impact in the Gulf of Mexico.[10] Following the hurricanes, the complaint alleges that

---

[4] Doc. #1, ¶ 7.

[5] Id.

[6] Doc. #1, ¶ 8.

[7] Doc. #1, ¶ 9.

[8] Doc. #1, ¶ 9 (The relevant agreement was made pursuant to the Liquids Allocation Agreement Blue Water Project (the "Allocation Agreement"), dated December 1, 2004 and joined by Virgin Offshore on August 30, 2005).

[9] Id.; Doc. #8-1.

[10] Doc. #1, ¶ 10.

one of TGP's pipelines required substantial repairs, resulting in a shut-in of EC 219 until April of 2009.[11] After unsuccessful attempts to recommence production of EC 219, Virgin Offshore and its contract operator, C.O.P.S., contacted TGP regarding the ongoing shut-in on or about April 6, 2009.[12] TGP responded that it would investigate the issue. When EC 219 remained shut-in, on or about April 16, 2009, Virgin Offshore and C.O.P.S. again contacted TGP, who again responded that it would investigate the situation.[13] Over the next six months, Virgin Offshore and C.O.P.S. continuously tried to operate EC 219, to no avail.[14]

Finally, in October and November of 2009, TGP discovered that a subsea valve was to blame for the obstruction of operations at EC 219.[15] However, prior to this discovery and the subsequent reparation of the valve, the lease between Virgin Offshore and MMS expired by its terms in October 2009, due to lack of production at EC 219 for a period of 180 days.[16] Virgin Oil claims that both itself and Virgin Offshore tried thereafter to reinstate the lease on the pretense that the non-production was due to a force majeure event, but they were unsuccessful.[17]

In March 2010, Virgin Oil re-acquired a lease on EC 219 at a total cost of $162,500, of

---

[11] Doc. #1, ¶ 11.

[12] Doc. #1, ¶ 14.

[13] Doc. #1, ¶ 15.

[14] Doc. #1, ¶ 16.

[15] Doc. #1, ¶ 17.

[16] Doc. #1, ¶ 19.

[17] Doc. #1, ¶ 20.

which Virgin Oil contributed $107,171.68 as its 65.9518% working interest.[18] On June 8, 2010, Virgin Offshore made a demand upon TGP through its parent company, El Paso Corporation. In connection with that demand, Virgin Offshore prepared and forwarded an Authorization for Expenditure ("EC 219 AFE"), related to all costs connected to the repurchase of the lease on EC 219.[19] According to the EC 219 AFE, an additional $139,300 would need to be spent in order to bring EC 219 into compliance with regulatory requirements so that Virgin Offshore can re-commence production. Of that amount, Virgin Oil's 65.9518% contribution would total $91,870.86.[20]

Virgin Oil claims that it suffered direct economic losses as a direct result of TGP's "(i) tortious failure to open certain subsea valves on a pipeline downstream of the gas well at EC 219 following post-hurricane repairs, and (ii) subsequent failure to discover or remedy this matter on a timely basis–despite receiving notice of high line pressure and shut-in's [sic] by Virgin Offshore and C.O.P.S.–the lease at EC 219 was lost because of non-production for over one hundred [sic] (180) days and Virgin Oil lost its 65.9518% working interest in EC219."[21] In light of the foregoing, Virgin Oil contends that TGP is liable unto it for $193,042.54, representing all costs and expenses incurred by Virgin Oil in connection with EC 219, plus 65.9518% of the production proceeds lost as a result of TGP's failure to open the subsea valve.[22]

---

[18] Doc. #1, ¶ 21.

[19] Doc. #1, ¶ 22.

[20] Doc. #1, ¶ 23.

[21] Doc. #1, ¶ 25.

[22] Doc. #1, ¶ 26-27.

## LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), TGP argues that Virgin Oil has failed to state a claim upon which relief may be granted, because TGP owed no duty to Virgin Oil.[23] TGP claims that Virgin Oil was not a party or third party beneficiary to the contract at issue, and without privity of contract, Virgin Oil cannot assert its negligence claim.[24] In an effort to support its argument, TGP cites the Louisiana Supreme Court's decision in *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984), for the proposition that Virgin Oil cannot recover indirect economic loss from a party who negligently damaged its contractual counterpart's pipeline.[25] Based on that decision, TGP alleges plaintiff Virgin Oil has, at most, an indirect claim and that Virgin Offshore would be the only potentially appropriate party to seek redress from TGP.[26] For the reasons discussed more fully below, the Court rejects this argument and finds that Virgin Oil's complaint makes sufficient allegations to state a claim for relief against TGP.

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). "The complaint should not be dismissed unless it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (internal citations omitted). Although TGP argues that the complaint sets forth a contract claim, it is clear that Virgin Oil has brought a tort

---

[23] Doc. #8.

[24] Doc. #8-1.

[25] Id.

[26] Id.

claim under La. Civ. Code art. 2315. Louisiana courts use a duty/risk analysis in determining whether to impose liability under La. Civ. Code art. 2315. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02); 816 So.2d 270, 276. The duty/risk analysis requires the plaintiff to establish that (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) the plaintiff suffered actual damages (the damage element). *Id.* The existence of a duty is a question of law, as is the question of whether a specific risk is included within the scope of the duty owed. *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir.1992).

TGP argues that Virgin Oil's negligence claim must fail for lack of a duty. Duty is usually defined as "the obligation to conform to the standard of conduct of a reasonable man under like circumstances." *Ellison*, 950 F.2d at 1205 (quoting *Seals v. Morris*, 410 So.2d 715, 718 (La.1981)). In determining the existence of a duty, Louisiana courts have typically recited that whether a legal duty is owed by one party to another "depends on the facts and circumstances of the case and the relationship of the parties." *Id.* TGP contends that no duty exists because Virgin Oil was not a party to the contract by which TGP is legally bound to Virgin Offshore. However, that argument must fail. In *PPG Industries,* the Louisiana Supreme Court acknowledged that this type of negligent interference with contractual relations is assessed under the duty/risk analysis in Louisiana.[27] 447

---

[27] TGP references a Fifth Circuit cite to a Texas state court decision, *Dewitt Cty. Elec. Coop v. Parks*, 1 S.W.3d. 96 (Tex. 1999). The Louisiana Supreme Court acknowledged the distinction between Louisiana's law on contractual interference and that of other jurisdictions. *See PPG Industries, Inc. v. Bean Dredging,* 447 So.2d 1058, 1059-1060, n. 4 (La. 1984). Therefore, the caselaw cited by TGP is inapplicable to the instant case.

So.2d at 1059-1060. The situation giving rise to the issue in this case clearly falls within the expansive language of the general duty created under La. Civ. Code art. 2315.

TGP also cites *PPG Industries* as the authority preventing Virgin Oil from recovering damages from TGP in this case. However, in *PPG Industries*, the Louisiana Supreme Court denied recovery in order to avoid creating liability "in an indeterminate amount for an indeterminate time to an indeterminate class." 447 So.2d at 1061. In light of that policy decision, this Court finds *PPG Industries* to be distinguishable from the instant facts and agrees with the reasoning set forth in the recent decision in *Gulf Production Co., Inc., et al v. Hoover Oilfield Supply, Inc., et al*, No. 08-5016, slip op. at 10 (E.D. La. Sept. 30, 2011).

*Gulf Production* addressed damages resulting from alleged improper application of a natural gas flow line. Similar to the instant matter, the plaintiffs in *Gulf Production* were working interest owners and/or mineral lessees under a joint operating agreement for the development, production, and sale of oil and gas or other minerals. 08-5016, slip op. at 2. The relevant defendant was Polyflow. Polyflow was the manufacturer of Thermoflex pipe, which was to be used in the natural gas flow line at issue in the case. *Id.* at 1-2. Just like Virgin Oil, each of the working interest owners in *Gulf Production* was responsible for its share of the costs and expenses related to the flow line. *Id.* at 2. As a result of the flow line's failure, the plaintiffs sued for damages sustained as a result of the plaintiffs' inability to transport the natural gas to be sold and economic damages for the cost of installing, removing, and storing the Thermoflex pipe. *Id.* at 3. Focusing on the scope of protection element of Louisiana's duty/risk analysis, Polyflow argued that plaintiffs' claims should be dismissed because they did not fall within Polyflow's general legal duties not to manufacture defective products, namely the Thermoflex pipe of the subject flow line. *Id.* at 3-4. In the end, the

*Gulf Production* court found that it was foreseeable that the working interest owners would be harmed by Polyflow's negligence; that they suffered direct economic loss in the form of deferred production; and that there was no danger of indefinite recovery if the plaintiffs were awarded damages. *Id.* at 10-14.

Here, the harm suffered by Virgin Oil was foreseeable; Virgin Oil incurred economic losses that were direct; and allowing Virgin Oil's claim to go forward will not create liability in an indeterminate amount for an indeterminate time to an indeterminate class. In the Fifth Circuit, the primary indicator of duty is whether the harm suffered by the plaintiff was foreseeable. *Crear v. Omega Protein, Inc.*, 86 Fed. Appx. 688, 690 (5th Cir. 2004) (citing *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir.1987)). "Harm is foreseeable 'if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.'" *Id.* at 691 (citing *Consolidated Aluminum*, 833 F.2d at 68). TGP's argument against duty, based on lack of contractual privity, must fail for the reasons previously stated. Further, just as TGP admits Virgin Offshore to be an appropriate party to seek redress against TGP,[28] this Court finds that Virgin Oil may seek redress for the foreseeable harm so suffered. As owner of a 65.9518% working interest in EC 219, Virgin Oil was the beneficiary of its subsidiary Virgin Offshore's production thereon; thus, TGP's failure to repair damage to the subsea valve at issue would have directly injured Virgin Oil by preventing operations at EC 219. Finally, there is a limited class of working interest owners in EC 219, such that the class of plaintiffs is not indeterminate and the list of possible victims is not in danger of indefinite expansion. *See* 08-5016, slip op. at 13-14.

---

[28] Doc. #8-1, p. 4.

In its Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, TGP challenges whether Virgin Oil has standing to pursue a claim in this lawsuit.[29] TGP bases its challenge on the fact that Virgin Oil is not a party to the contract at issue and therefore cannot sue on this "contract claim." "Standing is a jurisdictional requirement which remains open to review at all stages of litigation." *National Organization for Women, Inc. v Scheidler*, 510 U.S. 240, 255 (1994). Article III of the United States Constitution grants jurisdiction to the federal courts to hear only claims that meet the definition of "cases" or "controversies". *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (internal citation omitted). The Supreme Court, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), set forth the minimum requirements that an organization must establish to have constitutional standing: (1) injury-in-fact; (2) causal connection; and (3) redressability. *See Louisiana ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 304 (5th Cir. 2000).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561 (internal citations and quotation marks omitted). As discussed above in the 12(b)(6) analysis, accepting all facts as alleged in the complaint to be true, Virgin Oil has shown injury-in-fact. Virgin Oil suffered a "concrete and particularized" injury, which is economic damages in the amount of 65.9518% of all costs and expenses incurred, to maintain its working interest in EC 219. *See Lujan*, 504 U.S. at 560. Virgin Oil has also sufficiently pleaded a direct causal connection between its economic damages and the failure of TGP to maintain and/or repair its pipeline, in accordance with the agreement between TGP and Virgin Offshore. *Id.* And, finally, Virgin Oil has pleaded particularized economic damages, for

---

[29] Doc. #8.

which a favorable decision would provide sufficient redress. *Id.*

## CONCLUSION

Accordingly, in response to TGP's 12(b)(1) motion, the Court finds that Virgin Oil has provided sufficient evidence to establish standing at this stage of the litigation. Regarding TGP's 12(b)(6) motion, after assessing the legal feasibility of the complaint, the Court finds that Virgin Oil has sufficiently stated a claim upon which relief may be granted. Accordingly, Defendant's Motion to Dismiss [Doc. #8] is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of February, 2012.

DONALD E. WALTER
UNITED STATE DISTRICT JUDGE